b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DEMARCUS W. LAW                   CIVIL ACTION 1:17-CV-01068

VERSUS                            JUDGE DRELL

DARRELL VANNOY, WARDEN            MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMENDATION

Demarcus W. Law ("Law") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Because Law has not carried his burden of proving he is entitled to habeas relief, his § 2254 petition should be denied.

I.    Background

A.    Procedural Background

Law filed a § 2254 habeas petition contesting his 2012 conviction by a jury in the Louisiana 10th Judicial District Court in Natchitoches Parish, on one count of second degree murder and one count of attempted second-degree murder (Doc. 1). Law was sentenced to life plus fifty years without benefit of probation, parole, or suspension of sentence.  (Doc. 1); See State v. Law, 2012-1024 (La. App. 3d Cir. 4/3/13), 110 So.3d 1271, writ den., 2013-0978 (La. 11/22/13), 126 So.3d 475.[1]

---

[1] Law's co-conspirator, Jody D. Hamilton, was tried and convicted separately.  See State v. Hamilton, 2012-204 (La. App. 3d Cir. 11/20/13), 127 So.3d 76, writ den., 2013-2925 (La. 5/30/14), 140 So.3d 1173. A different version of the facts, involving a third co-conspirator, was set forth by the Louisiana Court of Appeal for the Third Circuit in Hamilton, 140 So.3d at **1:

> Defendant, Jody D. Hamilton, entered into a plan with Demarcus Law and Edward Paige to steal drugs from someone else. On December 12, 2009, Defendant and Law went to the residence where the drugs were located, and Law kicked in the door. Defendant then shot Dakaria Williams, who was in the living room, in the leg. Law proceeded to the kitchen where Paige and Shamichael Berryman were and began

Law raises the following grounds for habeas relief:

1. An incomplete trial record denied Law his Sixth Amendment right to a full review on direct appeal.

2. The trial court denied Law a fair trial when it failed to gran his motion for change of venue.

3. The trial court's jury instructions incorrectly included the phrase "or to inflict great bodily harm" within the attempted second-degree murder charge.

4. The evidence was insufficient to support the verdicts, and the trial court erred in failing to grans Law's motion for new trial.

5. The trial court erred in admitting firearms evidence in Law's trial because neither weapon was connected to him.

6. Law's trial was rendered fundamentally unfair because he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments in the following respects: (1) failing to object to the trial court's *ex-parte* communications with a member of the jury venire outside of Law's presence; and (2) failing to object to the trial court's erroneous charge to the jury.

Respondent answered the petition (Doc. 22), and Law filed a reply (Doc. 23).

Law's habeas petition is now before the Court for disposition.

### B.    Factual Background

The facts of this case as set forth by the Louisiana Court of Appeal for the Third

Circuit at Law, 110 So.3d at 1272-73, are as follows:

Dekaria Williams was sitting in the living room of his Natchitoches home. ShaMichael Berryman and Edward Paige were in the kitchen along with some quantity of cocaine.

---

shooting. Defendant shot Williams several more times but never entered the residence. When leaving the residence, Law noticed Williams was still moving and shot him in the face. Berryman was shot six times and died as a result of his injuries. Williams, who had been shot at least nine times, survived.

Suddenly, Defendant [Law] burst into the house; Williams tried to grab him, but Defendant shot him in the arm. Defendant then went into the kitchen and resumed shooting. Defendant's accomplice, Jody Hamilton, who was at the door, shot Williams multiple times. As Williams was getting up from Hamilton's last shot, Defendant ran back into the room and shot him in the face. Williams survived his many wounds; Berryman died. [Footnotes omitted.]

## II.    Law and Analysis

### A.    Rule 8(a) Resolution

The Court is able to resolve this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to the petitioner's claims, and the state court records provide the required and adequate factual basis. See Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

### B.    Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge. See Davis v. Ayala, 135 S. Ct. 2187, 2202 (U.S. 2015) (citing Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

Under 28 U.S.C. § 2254 and the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, which is applicable to habeas petitions filed

after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885 (2001).

Therefore, § 2254(d) demands an initial inquiry into whether a prisoner's "claim" has been "adjudicated on the merits" in state court; if it has, AEDPA's highly deferential standards apply. See Davis, 135 S. Ct. at 2198 (citing Richter, 562 U.S. at 103).

When a federal claim has been presented to a state court and the state court has summarily denied relief without a statement of reasons, it may be presumed that the state court adjudicated the claim on the merits, in the absence of any indication or state-law procedural principles to the contrary. Richter, 562 U.S. at 99. A habeas court must determine what arguments or theories supported, or could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. See Richter, 562 U.S. at 102. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's

burden must be met by showing there was no reasonable basis for the state court to deny relief.  Richter, 562 U.S. at 98.

Pursuant to AEDPA, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2).  See Martin, 246 F.3d at 475-76.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts.  See Martin, 246 F.3d at 476; see also Rivera v. Quarterman, 505 F.3d 349, 356 (5th Cir. 2007), cert. den., 555 U.S. 827 (2008).

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable.  A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable.  See Martin, 246 F.3d at 476.  An unreasonable application is different from an incorrect one.  See Bell v. Cone, 535 U.S. 685, 694 (2002).  When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was

unreasonable.  See Mitchell v. Esparza, 540 U.S. 12, 18 (2003); see also Davis, 135 S. Ct. at 2199 (citing Fry v. Pliler, 551 U.S. 112, 119 (2007)).

## C.    The law as to ineffective assistance of counsel.

To prevail on a habeas complaint of ineffective assistance of counsel, a complainant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984): (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.  A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different.  To make that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting.  The court does not assess any alleged error in isolation.  In an examination of state proceedings under 28 U.S.C. § 2254, the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence.  Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time.  See Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000), cert. den., 532 U.S. 915 (2001) (citing Strickland, 466 U.S. at 689).  Thus,

the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, such as whether counsel investigated enough or presented enough mitigating evidence. Those questions are even less susceptible to judicial second-guessing. See Dowthitt, 230 F.3d at 743 (citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999)).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. See U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966 (1994)).

### D. Law has not carried his burden of proving he is entitled to habeas relief.

#### 1. Law's claim of an incomplete trial record does not state a claim for habeas relief and he did not establish ineffective assistance of counsel.

Law contends that, during voir dire, there was no contemporaneous recording made of the exercise of challenges with regard to prospective jurors nor of arguments made by counsel with regard to all challenges for cause, which were denied by the judge. Law contends the off-the-record discussions with regard to the use of all challenges, both peremptory and for cause, were done in chambers in violation of La. C. Cr. P. art. 843[2] and State v. Pinion, 2006-2346 (La. 10/26/07), 968 So. 2d 131.[3] Law

---

[2] La. C. Cr. P. art. 843 requires, in felony cases, the recording not only of the evidentiary portions of trial but also of "the examination of prospective jurors ... and objections, questions, statements, and arguments of counsel." See Pinion, 968 So.2d at 134.

[3] In Pinion, 968 So. 2d at 134-135, the Louisiana Supreme Court held that the failure to record bench conferences will ordinarily not affect the direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant. The court explained that a case-specific inquiry should be

argues that, because of this, he was denied a full appellate review in violation of the Sixth Amendment.

### a.    This claim is not procedurally barred.

Respondent argues this claim is procedurally barred because Law failed to object to the unrecorded bench conferences and in-chambers discussions. However, on direct appeal, state courts did not impose a procedural bar but instead considered this claim on the merits. See Law, 110 So.3d at 1274-79.[4]

Moreover, the Louisiana Supreme Court has held that counsel is entitled to assume the court has taken adequate steps to preserve the record of the side-bar conferences for appeal just as counsel can reasonably assume the evidence portions of trial are also adequately recorded and preserved for review. See Pinion, 968 So.2d at 135. Counsel can also reasonably assume the court discharged its correlative duty of ensuring the minutes of the proceedings would conform to the requirements for the lodging of appeals in criminal cases and thus include a list of challenges for cause and peremptory challenges in addition to a list of jurors selected to try the case. See Pinion, 968 So.2d at 135-36. The court emphasized that "it is not the defendant's obligation to insure an adequate record .... it is the duty of the court .... to see that the court reporter makes a true, complete, and accurate record of the trial." See Pinion, 968 So.2d at 135.

---

conducted to determine whether the failure to record the conferences results in actual prejudice to the defendant's appeal. Pinion, 968 So. 2d at 134.

[4] The Louisiana Supreme Court denied writs without discussion. See Law, 126 So.3d at 475.

Since Law's attorney did not have a duty under Louisiana law to object to the court's failure to ensure a complete record was made for appeal and the state courts considered this claim on the merits, this claim is not procedurally barred.

### b. Law did not have ineffective assistance of counsel.

Law also contends he had ineffective assistance of counsel because his attorney failed to object. However, since Law's attorney did not have a duty to object, Law's counsel was not ineffective in this respect.

### c. Law has not shown his jury was not impartial.

On direct appeal, the Court of Appeal noted the bench conferences were unrecorded, the original record did not include the jury strike sheets, and the minutes did not specify whether the venire members excused were challenged for cause or peremptorily or which party challenged each venire member. See Law, 110 So.3d at 1274. The court obtained the jury strike sheets and found they showed the *successful* cause-based strikes, but not which party made them. See Law, 110 So.3d at 1275. However, the strike sheets showed which party made each peremptory strike and the appellate court assumed the peremptory strikes were made in response to Law's unsuccessful challenges for cause. See Law, 110 So.3d at 1275. The Court of Appeal concluded that Law could have constructed arguments regarding venire members by "[c]ombining the information in the strike sheets, the minutes, the voir dire examinations, and the short discussion of excused venire members that occurred at the venue hearing". See Law, 110 So.3d at 1276.

Law's co-conspirator, Hamilton, obtained a reversal of his conviction based on the fact that the voir dire transcript did not include the in-chambers discussions regarding the exercise of cause and peremptory challenges, and the minute entries did not indicate which side excused the prospective jurors and why. Additionally, the record indicated that Hamilton used all twelve of his peremptory challenges and, despite the fact that there was an objection to the denial of four challenges for cause asserted by Hamilton, the record was uncertain as to exactly how many challenges he made unsuccessfully. The appellate court vacated Hamilton's convictions. See Law, 110 So.3d at 1279 (citing Hamilton, 103 So.3d at 710-13, rev'd, 2013-0104 (La. 6/28/13), 117 So.3d 95.

In Law's appeal, the appellate court found Law's trial was distinguishable from Hamilton's because the record of Law's trial contained detailed voir dire examinations and, unlike in Hamilton's case, the jury strike sheets were available. See Law, 110 So.3d at 1279-80. The court further noted that Law did not make any specific arguments regarding challenges to any particular venire members. See Law, 110 So.3d at 1280.

On habeas review, this Court is concerned with violations of constitutional law. See 28 U.S.C. § 2254(a). Peremptory challenges are not of constitutional dimension. They are a means to achieve an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988); Jones v. Dretke, 375 F.3d 352, 355 (5th Cir. 2004). Therefore,

10

as a general rule, a trial court's erroneous venire rulings do not constitute reversible constitutional error so long as the jury that sits is impartial.  See Jones, 375 F.3d at 355; Herman v. Johnson, 98 F.3d 171, 174 (5th Cir. 1996), cert. den., 520 U.S. 1123 (1997).

The fact that Law's trial record was incomplete due to unrecorded portions of the jury selection is not, standing alone, a violation of Law's constitutional rights. Law must allege and show he was not tried by an impartial jury.  Law, an African American, contends only that "race was an issue due to the small number of blacks on the jury."  Essentially, Law complains that, due to pretrial publicity and wide-spread knowledge of the incident in the African-American community in Natchitoches, African Americans were underrepresented in his jury.[5]  Law has not alleged or shown that his jury was not impartial.

Therefore, Law claims of an incomplete trial record as to jury selection does not state a claim for habeas relief.

### 2.    Law's claim that the trial court erred in denying his motion for change of venue does not state a claim for habeas relief.

Law contends, in his second ground for relief, that he was denied a fair trial because he was not granted a change of venue due to pretrial publicity.  Law concedes in his brief that "most or all of the white jury candidates were unaware of the facts of the case."  (Doc. 1-2, p. 11/22).  However, Law complains that his motion to change venue should have been granted because "the vast majority of the African-American

---

[5] Law contends "a possible pattern of disparate treatment could be possibly shown and/or strengthened if the record was complete," as demonstrated in his second ground for relief.  Law's second ground for relief is considered separately.

candidates that were called personally knew the parties and/or were familiar with the case."  Law contends the widespread knowledge of his case in the African-American community reduced the pool of potential African-American jurors who could serve on his jury.

Respondent argues there was no showing of extensive pre-trial publicity or prejudice, and the State accepted African-American jurors who were subsequently struck by the defendant.[6]

The trial judge made findings on the motion to transfer (Doc. 22-3, p. 257/658). There were three venire panels.  Six African-American potential jurors were excused for cause from the first panel, one African-American potential juror was excused for cause from the second panel, and no one was excused for cause from the third panel. The trial judge concluded "the venire was not overly burdened with too much knowledge about this case in order for there to be a jury selected from a reasonable cross-section of the community."  (Doc. 22-3, p. 257/658).  The State pointed out that Law peremptorily struck two African-American potential jurors, and that two of the African-Americans who were accepted as jurors did not know anything about Law's case prior to the trial (Doc. 22-3, pp. 244, 256-57/658).

The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury.  By constitutional design, that trial occurs "in the State where the ... Crimes ... have been committed."  See <u>Skilling v. United States</u>, 561 U.S. 358, 377–

---

[6] The Respondent also contends this claim is procedurally defaulted.  However, since defense counsel filed a motion for change of venue (Doc. 22-3, p. 256/658), it clearly was not procedurally defaulted.  To the extent Respondent may be arguing Law defaulted on a <u>Batson</u> claim, such a claim has not been made.

78 (2010).  The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a "basic requirement of due process."  See Skilling, 561 U.S. at 377–78 (citing In re Murchison, 349 U.S. 133, 136 (1955)).

As a general rule, a state defendant who seeks habeas relief as a result of pretrial publicity must demonstrate an actual, identifiable prejudice on the part of members of the jury that is attributable to that publicity.  See Moore v. Johnson, 225 F.3d 495, 504 (5th Cir. 2000), cert. den., 532 U.SA. 949 (2001) (citing Willie v. Maggio, 737 F.2d 1372, 1386 (5th Cir. 1984)).  Alternatively, a petitioner may show that inflammatory, prejudicial pretrial publicity so pervaded or saturated the community as to render virtually impossible a fair trial by an impartial jury drawn from that community.  On such a case, jury prejudice is presumed and there is no further duty to establish bias.  See Rideau v. Louisiana, 373 U.S. 723 (1963).

Law has not alleged or shown that inflammatory prejudicial pretrial publicity saturated the community,[7] or that individual jurors were actually prejudiced by the pretrial publicity.  Therefore, Law has not shown it was virtually impossible for him to have a fair trial by an impartial jury in his community.

---

[7] See Rideau v. Louisiana, 373 U.S. 723 (1963) ("[A] petitioner [has adduced] evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, (jury) prejudice is presumed and there is no further duty to establish bias").

Law has alleged only that there should have been more African-American jurors in his jury because the City of Natchitoches is a primarily black community. Law appears to be alleging his jury was not composed of a fair cross-section of his community. However, to establish a prima facie violation of the fair cross-section requirement, the Supreme Court's "path-marking decision" in <u>Duren</u> instructs that a defendant must prove that: (1) a group qualifying as "distinctive" (2) is not fairly and reasonably represented in jury venires, and (3) "systematic exclusion" in the jury-selection process accounts for the underrepresentation. <u>See</u> <u>Berghuis v. Smith</u>, 559 U.S. 314, 327 (2010) (citing <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979)).

Law has not alleged or shown there was systematic exclusion of African-Americans in his jury selection process. Therefore, Law has not proven a fair cross-section claim.

Law has not carried his burden of proving he is entitled to habeas relief due to the trial court's failure to grant a change of venue.

### 3.  <u>Habeas review of the incorrect jury charge on attempted second degree murder is procedurally barred.</u>

Law contends the trial court's jury instructions incorrectly included the phrase "or to inflict great bodily harm" within the attempted second-degree murder charge. Respondent contends this claim is procedurally defaulted because Law failed to object to the jury charge at trial.

The Court of Appeal noted that defendant failed to object to the instruction and refused to consider the claim on the basis that is was procedurally defaulted. <u>See</u> <u>Law</u>, 110 So.3d at 1284. The Louisiana Supreme Court denied writs without

14

discussion.[8]  See Law, 126 So.3d at 475.  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.  See Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)).  It is well-settled that the contemporaneous objection rule is an independent and adequate state procedural ground which bars federal habeas corpus review.  See id.  As long as the state court relied on the procedural default in dismissing the claim, the claim is immune from federal review.  See id.

Law argues that, although he may have procedurally defaulted this claim in state court because his attorney failed to object to the erroneous jury charge, ineffective assistance of counsel satisfies the requirements of cause and prejudice.

Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.[9]  See Lott v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996).  Absent exceptional circumstances,

---

[8] Where the last reasoned state court opinion on a federal claim explicitly imposes a procedural default, there is a presumption that a later decision rejecting the same claim without opinion did not disregard the procedural bar and consider the merits.  See Lott v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996) (citing Ylst v. Nennemaker, 501 U.S. 797, 803 (1991)).

[9] A fundamental miscarriage of justice occurs only in a very narrow class of cases where a constitutional violation probably resulted in the conviction of an innocent person.  McCleskey v. Zant, 499 U.S. 467, 494 (1991); see also Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992) (the miscarriage of justice exception is concerned with actual rather than legal innocence).  Law has not alleged or proven he is actually innocent.

establishment of ineffective assistance of counsel satisfies cause and prejudice.  See U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

Under Louisiana law, a specific intent to inflict great bodily harm is not an element of the crime of attempted second-degree murder.  See State v. Holmes, 620 So.2d 436, 437 (La. App. 3d Cir. 1993), writ den., 626 So.2d 1166 (La. 1993) (citing State v. Butler, 322 So.2d 189 (La. 1975)).  An erroneous jury instruction which, in violation of Louisiana law, improperly includes intent to inflict great bodily harm as an element of attempted second-degree murder, is subject to harmless error analysis. State v. Bishop, 2001-2548 (La. 1/14/03), 835 So.2d 434, 439 (citing State v. Hongo, 96-2060 (La. 12/02/97), 706 So.2d 419).  An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction.  See Bishop, 835 So.3d at 439 (citing Hongo, 706 So.2d at 421).  "The determination is based upon whether the guilty verdict actually rendered in *this* trial was not attributable to the error."  See Bishop, 835 So.3d at 439 (citing Sullivan v. Louisiana, 508 U.S. 275, 279 (1993)).

Dakaria Williams testified at trial that Hamilton and Law entered his home with guns.  (Doc. 22-3, p. 343/658).  Williams tried to grab Law and Law shot Williams in his left arm.  (Doc. 22-3, p. 343/658).  Williams let go of Law, who ran to the kitchen. (Doc. 22-3, p. 344/658).  Hamilton stayed by the door, shooting at Williams from about ten feet away.  (Doc. 22-3, p. 344/658).  Williams testified that, every time Hamilton shot him, he would fall then get back up and try to get to Hamilton.  (Doc. 22-3, p.

16

344/658).  When Williams got close, Hamilton would shoot him again.  (Doc. 22-3, p. 344/658).  Hamilton would shoot Williams twice each time.  (Doc. 22-3, p. 344/658). The last time Williams was getting up, Law ran out of the kitchen, pointed his gun at Williams, and tried to shoot Williams in the head.  (Doc. 22-3, pp. 344-45/658). Williams moved his head a little bit, so Law only shot him in the face.  (Doc. 22-3, p. 344/658).  Law then ran out of the house.  (Doc. 22-3, p. 345/668).

Law did not present any testimony in his defense.[10]  There was no evidence presented to the jury which would support a finding that Law had the intent only to inflict great bodily harm on Dakaria Williams, or that he accidently shot Dakaria Williams.  Under Louisiana law, specific intent to kill may be inferred from the act of aiming a loaded weapon directly at the victim and firing it.  See State v. Jackson, (La. App. 2d Cir. 2008) 976 So.2d 279, 284 (citing State v. Robinson, 2002-1869 (La. 4/14/04), 874 So.2d 66, cert. den., 543 U.S. 1023 (2004)); State v. Davis, 411 So.2d at 6; State v. Nguyen, 05-KA-569 (La. App. 5th Cir. 2/3/06), 924 So.2d 258, 263.  No reasonable jury could have concluded that Law had the intent to only inflict great bodily harm when he aimed his gun directly at Williams head and fired it.  The jury clearly found Law had the specific intent to kill Williams, rather than the specific intent to commit great bodily harm on Williams.  Therefore, the erroneous jury instruction as to attempted second degree murder was harmless error.

Since Williams cannot show prejudice arising from the the erroneous jury instruction as to attempted second degree murder, he cannot show he had ineffective

---

[10] Since neither the opening statements nor the closing arguments were transcribed (Doc. 22-3, pp. 263, 417/658), the undersigned cannot tell whether Law argued that he shot Williams accidentally.

assistance of counsel.  Therefore, he has not proven cause and prejudice to overcome the procedural bar to habeas review.

This claim is procedurally barred.

### 4.    There is sufficient evidence to support the verdicts.

Law contends there is insufficient evidence to support the verdicts, and the trial court erred in failing to grant Law's motion for new trial.  Respondent argues the weight of the evidence supports the verdicts.

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163 (1995) (citing Jackson v. Virginia, 443 U.S. 307 (1979)).  Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  See West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242 (1997), citing, Jackson v. Virginia, 443 U.S. 307, 322-26 (1979).  To apply this standard, the court looks to elements of the offense as defined by state substantive law.  See Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001).

A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to a great deal of deference by a reviewing court.  See Marshall v. Lonberger, 459 U.S. 422,

433-35 (1983). In addition, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight. See Jackson, 443 U.S. at 322 n.15.

In Louisiana, La. R.S. 14:30.1(A)(1) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Attempted second degree murder requires that the defendant possess the specific intent to kill and that he commit an overt act tending toward the accomplishment of that goal. See La. R.S. 14:27; La. R.S. 14:30.1; State v. Butler, 322 So.2d 189, 192 (La. 1975); State v. Allen, 2013-0195 (La. App. 4 Cir. 7/2/14), 2014 WL 2983452.

As to sufficiency of the evidence, Law argues that: (1) Williams heard but did not see the shooting take place in the kitchen; (2) Law told his father and the police that three or four people entered his home and attacked them, but testified at trial that only Hamilton and Law did so; (3) Williams was engaged in a felony (possession of crack cocaine) at the time of the incident; and (4) Williams appeared to be more concerned about the fate of his drugs than about Berryman's fate.

The Louisiana Court of Appeal for the Third Circuit noted that, on appeal, Law argued the evidence supporting his conviction for murdering Berryman was circumstantial since Williams heard shots but did not see the shooting in the kitchen. Law also argued that Williams was not credible due to inconsistencies between his trial testimony and his earlier statements to police. See Law, 110 So.3d at 1273. That court found the conviction was supported by sufficient evidence:

19

The focus of Defendant's credibility attack is that the victim told his father that there were three or four attackers and he did not know who they were. During his testimony, the victim acknowledged that at one time he thought there may have been a third person involved in the offense, possibly a person named Paige, but he affirmed that he saw Defendant and Hamilton. He had known Defendant since the latter was a little boy, but they were not close. Regarding the victim's failure to identify the shooters to his father, the victim explained that he did not want his father to get involved, as he did not "want him [his father] to do nothing to get in no trouble."

Defendant argues "it is of great moment that Dekaria Williams was engaged in the commission of a felony at the time of the shootings." Also, Defendant suggests that immediately after the incident, Williams displayed some degree of indifference in regard to Berryman. It is not clear that the second statement is a correct assessment. However, even if Defendant's factual premises are both correct, he does not explain how either would have affected the victim's credibility.

As noted in <u>Kennerson</u>, a jury's credibility assessments are not to be second-guessed. Defendant's arguments provide no basis for a reassessment of matters that were put to the jury at trial. [Footnote omitted.]

<u>See</u> <u>Law</u>, 110 So.3d at 1273–74.

At Law's trial, Jeff Townsen testified that he is a detective employed by the Natchitoches Police Department. (Doc. 22-3, p. 313/658). Townsen testified he took a recorded statement from DeKaria Williams before he was transported to the hospital. (Doc. 22-3, p. 314/658). That statement led Townsen to search for Demarcus Law and Jody Hamilton. (Doc. 22-3, p. 314/658). Townsen testified that, although he thought there was a third person involved, that person was never discovered. (Doc. 22-3, p. 316/658). Edward Paige's name came up during the course of the investigation. (Doc. 22-3, p. 318/658).

Julius Armstrong, an investigator for the Natchitoches Police Department, testified that DeKaria Williams gave Detective Townsen the names of Jody Hamilton and Demarcus Law as the shooters. (Doc. 22-3, p. 321/658). Armstrong testified that one of the firearms (a 9 mm. Ruger) used in the incident was found under a porch by a child and turned in by her mother. (Doc. 22-3, p. 325/658). Another firearm (a .380 automatic) used in the incident was found by an adult under a house. (Doc. 22-3, p. 325/658). Armstrong further testified that Law told Detective Pinkney that Edward Paige set up the break-in and shooting. (Doc. 22-3, pp. 326-27/658). Armstrong testified that the only persons who actually participated in the shooting were Hamilton and Law. (Doc. 22-3, p. 329/658).

Victor Pinkney, a detective employed by the Natchitoches Police Department, testified that Law "blurted out" to him and Det. Armstrong that Edward Paige (also known as "Pooh") had set the "whole thing" up. (Doc. 22-3, p. 338/658).

DeKaria Williams testified that, at the time of the incident, Paige, and Berryman were in his kitchen and he was in the living room. (Doc. 22-3, pp. 343, 351/658). The door "burst open," Law entered, Williams tried to grab him, and Law shot Williams in the left arm. (Doc. 22-3, p. 343/658). Williams knew who Law was because they were raised in the same neighborhood. (Doc. 22-3, p. 343/658). When Williams let go of Law, Law ran into the kitchen, shooting. (Doc. 22-3, pp. 343-44/658). Meanwhile, Hamilton was at the door and shooting at Williams from about ten feet away. (Doc. 22-3, p. 344/658). Hamilton shot Williams nine or ten times. (Doc. 22-3, p. 344/658). Every time Hamilton shot Williams, Williams would fall, then

get back up and try to get to Hamilton. (Doc. 22-3, p. 344/658). When Williams got close, Hamilton would shoot him again. (Doc. 22-3, p. 344/658). Hamilton shot Williams twice each time. (Doc. 22-3, p. 344/658).

Williams testified that, the last time he was getting up, Law ran out of the kitchen and tried to shoot Williams in the head. (Doc. 22-3, p. 344/658). Williams testified that he looked up and saw Law pointing a gun at his head. (Doc. 22-3, p. 345/658). However, Williams moved a little bit, so Law's shot hit his face, instead. (Doc. 22-3, p. 344/658). Hamilton ran out of the house first, then Law ran out. (Doc. 22-3, p. 346/658). Williams got up, exited the house, then went back in for his phone to call 911. (Doc. 22-3, p. 346/658). Williams father arrived; he had seen Law running away. (Doc. 22-3, p. 346/658). Then Paige returned. (Doc. 22-3, p. 345/658). Williams testified that he assumed Paige had run away when the shooting began. (Doc. 22-3, p. 346/658).

Williams testified that neither Law nor Hamilton had covered their faces, so he knew they were going to kill him. (Doc. 22-3, p. 345/658). Williams admitted he had drugs (powder cocaine) in the kitchen. (Doc. 22-3, pp. 345, 349/658).

Williams testified he told his father he did not know the shooters because he did not want his father to do anything or get into trouble. (Doc. 22-3, p. 346/658). However, Williams thought he was going to die, so he told the police who the shooters were. (Doc. 22-3, p. 347/658).

Dr. Long Jin, a forensic pathologist, testified that he examined Berryman and found he had been shot six times. (Doc. 22-3, p. 360/658).

Eric Dewayne Addison testified that he picked up Hamilton and Law on the day of the incident, apparently after the incident, and dropped them off at Sammy Morris's house. (Doc. 22-3, p. 371/658). Addison testified that Hamilton was not acting normal. (Doc. 22-3, pp. 371-72/658). Addison did not see any guns and did not know what they had been doing. (Doc. 22-3, p. 373/658). Addison picked them up again later and dropped them off somewhere else. (Doc. 22-3, p. 372/658).

Sammy Morris testified that Addison dropped Law and Hamilton off at his house on the day of the incident, they stayed there two or three hours, burned some clothes in his barbeque pit, then they left again with Addison. (Doc. 22-3, p. 376/658).

Edward Paige testified that he was with Berryman and Williams at Williams' house because they had drugs. (Doc. 22-3, p. 387/658). Hamilton had called Paige the day of the shooting and Paige told him he was just riding around. (Doc. 22-3, pp. 388-89/658). Hamilton had seen Paige riding with Berryman and Williams. (Doc. 22-3, p. 389/658). Paige testified that he was in the Williams's kitchen with Berryman when he heard the door kicked in and gunshots. (Doc. 22-3, p. 389/658). Paige testified that, after he heard the first gunshot, he looked back one time, then ran through the back door and two streets over. (Doc. 22-3, p. 390/658). Paige heard 15 to 20 shots. (Doc. 22-3, p. 390/658). The shots had stopped by the time he reached the back yard. (Doc. 22-3, p. 390/658). Paige went a couple of blocks, then returned to Williams's house to check on the others. (Doc. 22-3, p. 391/658). Paige testified that he had been friends with Berryman, but he did not really know Williams. (Doc. 22-3, pp. 391-92/658).

23

Officer Roy Lee of the Natchitoches City Police testified that he arrived at the scene soon after the incident. (Doc. 22-3, p. 395/658). Williams told him Law and Hamilton had shot him. (Doc. 22-3, p. 395/658). Officer Lee saw Paige arrive and heard him say he wanted to check on Williams and Berryman (Doc. 22-3, p. 396/658).

Richard Beighley, the firearms section supervisor at the North Louisiana Crime Lab, was accepted as an expert in the field of ballistics and firearms identification. (Doc. 22-3, pp. 397-99/658). Beighley testified that he examined the casings and bullets found on scene and the bullets retrieved from Berryman and Williams, as well as the 9 mm semi-automatic pistol and .380 caliber Bersa pistol (model Thunder .380). (Doc. 22-3, p. 403/658). Beighley testified the casings found on scene matched those firearms – four from the .380 and ten from the 9 mm. (Doc. 22-3, pp. 404, 409/658). One bullet from the scene matched the 9 mm. Ruger and one bullet had the class characteristics of the Bersa.[11] (Doc. 22-3, p. 405/658). The bullets from Berryman's autopsy matched the 9 mm. Ruger. (Doc. 22-3, p. 405/658). Beighley testified there was no evidence of a third firearm.

Audra Williams, a forensic DNA analyst at the North Louisiana Crime Lab, was accepted an expert in DNA analysis. (Doc. 22-3, p. 412/658). Audra Williams testified that she did not collect any DNA profiles from the swabs of the weapons. (Doc. 22-3, p. 415/658).

The jury concluded from the evidence that Law shot and killed Berryman, and attempted to kill Williams by shooting at his head. After viewing all the evidence in

---

[11] The .380 caliber Bersa had too much soil and rust for Beighley to be able to batch bullets to it (Doc. 22-3, p. 405/658).

the light most favorable to the convictions and affording great weight to the state court's finding, it is clear that a rational trier of fact could have found the essential elements of second degree murder and attempted second degree murder were proven beyond a reasonable doubt. There is sufficient evidence to support the convictions.

This ground for habeas relief is meritless.

### 5.    The trial court did not err in admitting the firearms into evidence.

Law contends the trial court erred in admitting firearms evidence in Law's trial because neither weapon was connected to him. Law argues there was no evidence connecting him to the 9 mm. Ruger or the .380 caliber Bersa.

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief. See Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. 1981). Thus, claims challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law. In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause. See Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir. 1998), cert. denied 524 U.S. 979 (1998).

The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief if fundamental fairness was prevented thereby. What elevates the mistake to a constitutional plane is at least two-fold. First, the mistake

must be material in the sense of a crucial, critical, highly significant factor.  Second, it must have some state complicity in it.  See Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215 (1983); see also Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850 (1976).   The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact.  See Collins v. Cain, 2013 WL 4891923, at *22 (E.D. La. 2013) (citing Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997)).

The testimony in this case showed that casings and bullets retrieved from Berryman and the crime scene came from the .380 Bersa and the 9 mm. Ruger. Williams' testimony placed Law at the crime scene with a gun.  Whether or not Law possessed and used the Bersa or the Ruger was an issue of fact tried by the jury.

Since Law has not shown his trial was rendered fundamentally unfair by admission of the .380 Bersa and the 9 mm. Ruger into evidence, this ground for relief is meritless.

6. **Law has not carried his burden of proving he had ineffective assistance of counsel with respect to Juror Bailey.**

a. **Law did not show prejudice arising from Juror Bailey's participation in his trial.**

Law contends his trial counsel failed to object to the trial court's ex-parte communications with a member of the jury venire, Bailey, outside of Law's presence. Law admits his attorney was present during the communication, but complains he was excluded.  Law also contends Bailey was biased against him because she knew

the surviving victim, Williams.  Juror Bailey was on the second panel of the jury venire (Doc. 22-3, p. 80/658) and ultimately sat on Law's jury (Doc. 22-3, p. 81/658).

When the trial judge asked the potential jurors if they knew the victims or their families.  (Doc. 22-3, pp. 176/658), Bailey said she did not know any of the families (Doc. 22-3, p. 207/658) but did not say she knew Williams.  Bailey admitted she had heard a little bit about the case before trial through gossip but had not formed an opinion about guilt.  (Doc. 22-3, p. 206/658).  Bailey stated she did not want to be on the jury because she did not want to judge someone else.  (Doc. 22-3, pp. 206/207/658).  Bailey was chosen to serve on the jury.  (Doc. 22-3, p. 210/658).  There is no record of a challenge for cause against Bailey.

On post-conviction relief, the district court noted that, after the jury retired for deliberations, Bailey informed the bailiff she needed to speak with the judge.  (Doc. 22-3, p. 639/658).  The trial judge, both counsel, and Bailey met in chambers, outside the presence of Law.  (Doc. 22-3, p. 639/658).  Bailey disclosed she knew DeKaria Williams from high school but had not had a relationship with him since the 1990s and said the prior relationship would not affect her judgment.  (Doc. 22-3, p. 639/658).  Instead, Bailey complained it was a "hard decision" that she did not want to be involved in.  Bailey was not excused from the jury, and both attorneys agreed with the court's decision not to release her.  (Doc. 22-3, p. 639/658).  After the verdict was entered, the trial judge recited what had occurred with Bailey into the record in Law's presence.  (Doc. 22-3, pp. 431-32/658).  On post-conviction relief, the district court

27

found that, because Bailey was not disqualified, Law's right to be present, as set forth in La. C. Crim. P. art. 831, was not abridged.  (Doc. 22-3, pp. 640-41/658).

Law has not alleged what difference his presence would have made to the discussion in chambers, or how his trial was rendered fundamentally unfair by the fact that Bailey used to know, but no longer had any kind of relationship with, one of the victims.

Law contends Bailey was biased and failed to disclose it during voir dire.  One touchstone of a fair trial is an impartial trier of fact - "a jury capable and willing to decide the case solely on the evidence before it."  Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.  Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges.  The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.  See McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984).

In Montoya v. Scott, 65 F.3d 405, 418-19 (5th Cir. 1995), cert. den., 517 U.S. 1133 (1996), the United States Court of Appeals for the Fifth Circuit considered a similar factual situation.  One of Montoya's jurors knew the victim and failed to disclose it at voir dire.  The Fifth Circuit held that, to obtain a new trial, Montoya must: (1) demonstrate that a juror failed to answer honestly a material question on voir dire; and (2) then further show that a correct response would have provided a

valid basis for a challenge for cause.  In <u>Montoya</u>, 65 F.3d at 418, the Fifth Circuit relief on the Supreme Court's decision in <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548 (1984):

> [T]o obtain a new trial is such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

The Fifth Circuit found Montoya failed to establish a prima facie case pursuant to McDonough because he did not show the juror's correct response would have constituted a valid basis for a challenge for cause.  See <u>Montoya</u>, 65 F.3d at 419.

As in <u>Montoya</u>, Law has not shown Bailey could have been challenged for cause, as set forth in La. C. Crim. P. art. 797(3) (enumerating challenges for cause). Bailey no longer had any kind of relationship with the victim and said she would not be influenced by the past relationship.  The trial was in 2012, and Bailey dated Williams in "the 1990s".  <u>Compare</u> <u>State v. Allen</u>, 95-1754 (La. 9/5/96, 16), 682 So.2d 713, 725 (the juror did not have an extensive personal relationship with the victim and that relationship would not influence the juror's verdict); <u>State v. Senegal</u>, 333 So. 2d 639, (La. 1976) (although juror went to high school with the victim and used to drink beer with him, that relationship would not influence the juror's verdict); <u>contrast</u> <u>State v. Brown</u>, 496 So.2d 261, 264 (La. 1986) (juror whose son was friends with the victim, who knew the victim's family, and said her verdict would be influenced by those friendships, should have been excused).  There was thus no basis for a challenge for cause of Juror Bailey.

29

Since Law cannot make a *prima facie* showing that he would have been entitled to a new trial on the basis of a biased juror, he has not shown he was prejudiced by his attorney's failure to object.

Law has not shown he had ineffective assistance of trial counsel with respect to Juror Bailey.

> **b.** **Law did not have ineffective assistance of counsel with respect to his jury charge for attempted second degree murder.**

Next, Law contends he had ineffective assistance of trial counsel when his attorney failed to object to the trial court's erroneous charge to the jury as to attempted second degree murder. As discussed above, Law failed to show prejudice and prove he had ineffective assistance of counsel with respect to this jury charge.

## III.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that Law's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required

nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana on this 27th day of December, 2018.

_____

Joseph H.L. Perez-Montes
United States Magistrate Judge

31